THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ESSIE BOATMAN, Defendant-Appellant.

(No. 55086;

First District—January 19, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James N. Karahalios, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Essie Boatman, was charged in two separate indictments with commission of the offenses of rape and deviate sexual assault upon Glossie Davis and upon Dorothy Timms. The two causes were consolidated. After a trial before the court, without a jury, the defendant was found guilty of all four offenses and sentenced to serve 5 to 12 years in the Illinois State Penitentiary for each offense, the sentences to run concurrently.

The defendant, on appeal, contends (1) that he was not proven guilty beyond a reasonable doubt because the testimony of the two complaining witnesses was incredible and highly improbable and because the evidence failed to demonstrate a desire to resist on the part of Glossie Davis; and (2) that the trial court erred in refusing to admit testimony concerning the reputation of the complaints' place of residence.

Glossie Davis, a mother of two children and a cashier in the cafeteria of the University of Illinois Medical Hospital, testified that at about 12:30 A.M. on August 7, 1969, she was standing in front of her apartment building located at 3414 West Jackson Boulevard in Chicago, Illinois, when the defendant drove up in a 1962 or 1963 Chevrolet Impala. He got out of his car, and after inquiring whether two of his partners lived in the building, he forced her into the car at knife point. He then drove to a vacant lot underneath the rapid transit elevated tracks where he forced her to perform two acts of fellatio and raped her twice. While there he additionally threatened to cut off one of her breasts and to carve his gang's initials on her face. After exacing a promise from her not to call the police, he started to drive home; and on the way he stopped at a service station to purchase gasoline. While they were there, the defendant warned her not to cry out and continued to hold a knife at her side. When they returned to the building, she saw Dorothy Timms, a neighbor, standing out in front. The defendant forced her to lure Miss Timms into the car and then started to drive on again. After travelling for two blocks, the defendant permitted her to leave the car and then continued on with Miss Timms. She immediately ran to her landlady's apartment and reported the incident. Whereupon the police were called.

Dorothy Timms testified that early in the morning of August 7, 1969, she was persuaded by Glossie Davis to take a ride in a maroon automobile. After she entered the car, the defendant who was driving, proceeded for two blocks, stopped, and told Miss Davis to leave the car. After Miss Davis got out, the defendant drove to a vacant lot where he pulled out a knife, pressed it against her neck, and forced her to perform the same acts described by Glossie Davis. Afterward, the defendant drove to the vicinity of her home, and when he stopped for a light, she rolled out of the car and ran to a building where a friend lived.

Elnora Percy, the manager of the apartment building where the complaining witnesses reside, testified that at about 2:00 A.M. on August 7, 1969, Glossie Davis, who was crying and hysterical, rang the bell to her apartment and stated that she had been raped. Elnora Percy immediately thereafter called the police.

Sergeant Gary E. Bazarek of the Chicago Police Department testified that he received a call to go to the Jackson Boulevard address at

2:15 A.M. on the morning in question. He went to Mrs. Percy's apartment and observed that Glossie Davis was crying and on the verge of hysteria. Miss Davis told the police what had occurred and expressed her concern for the safety of Dorothy Timms. Miss Davis then described the defendant and the clothes which he was wearing and stated that the defendant was driving a 1962 or 1963 red Chevrolet Impala. He drove about the area for some time until he saw a red Chevrolet. He stopped the car and ordered the defendant out of it at gun point. After noting that the defendant was wearing the clothes described by Miss Davis, he placed him under arrest.

Essie Boatman testified on his own behalf and stated that while he was driving down Jackson Boulevard, on the way to a friend's house, he was hailed to the side of the road by Glossie Davis. After he stopped and picked her up, she asked him if he wanted a date and he replied that it depended on the price. They argued about the amount, and then, by agreement, went to a vacant lot where they had sexual intercourse. He denied having more than one sexual relationship with Glossie Davis and denied that he had a knife. With respect to Dorothy Timms, he stated that he had never seen her prior to her appearance in court.

A neighbor of the defendant, the mother of his girl friend and his brother, testified that the defendant had a reputation for peacefulness in the community.

■■ Initially we agree with the defendant, that he is presumed innocent and that this presumption can only be overcome if the State proves his guilt beyond a reasonable doubt by credible evidence. (*People v. Coulson*, 13 Ill.2d 290, 149 N.E.2d 96.) The defendant questions the truthfulness of the complainants' testimony and points out inconsistencies and contradictions in the testimony of the complaining witnesses. It is not uncommon when two persons view the same events for one to observe and recall details which the other does not remember; and likewise, it is not unusual after the passage of time for the two persons to give testimony which is inconsistent in some details. The testimony of the comlainants is in substance corroborative. The differences and discrepancies which exist are relatively minor and do not discredit the testimony when viewed as a whole. See: *People v. Smith*, 102 Ill.App.2d 134, 243 N.E.2d 286.

■■ It is also argued, as a practical matter, that it is highly improbable (1) that the defendant could or would become involved in sexual activity with the frequency stated by the complainants and (2) that a criminal would follow the course of conduct ascribed to the defendant by the prosecutrixes. The weight and credibility to be attached to the testimony of witnesses is a matter for the trier of facts. It is within the province of

the trial judge who sees and hears the witnesses, to decide which portions of the testimony are to be believed and to determine whether the evidence presented by the State, when viewed in its totality, is credible and consistent with human experience.

■■ We have closely examined the entire record and are convinced that the crucial question presented was one of credibility. The two prosecutrixes testified that they had been raped and forced to perform repeated acts of fellatio. The defendant admitted having sexual relations with one of the complainants, but denied ever seeing the other prior to trial. Glossie Davis made immediate outcry to her landlady, and the testimony of Dorothy Timms is corroborated in important part by Miss Davis. The trial judge, after seeing, observing, and hearing the witnesses, found that the testimony of the State's witnesses was believable and found the defendant guilty as charged. There is sufficient evidence in the record to support such a finding, and on review we will not disturb it.

■■■ The defendant further claims that the evidence does not demonstrate a desire to resist on the part of Glossie Davis. It is well settled that in order to warrant a conviction for the offense of rape or deviate sexual assault, the State must prove not only that the acts were committed, but also that the acts were performed forcibly and against the will of the complaining witness. (*People v. DeFrates,* 33 Ill.2d 190, 210 N.E.2d 467.) The degree of force exerted by the defendant and the amount of resistance required on the part of the complaining witness were matters that depend upon the facts of a particular case. As the court points out in *People v. Smith,* 32 Ill.2d 88, 92, 203 N.E.2d 879, 881:

"There is no definite standard fixing the amount of force required and each case must be considered on its own facts. It is the general rule that if the female has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. However, resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female, nor where she is overcome by superior strength or paralyzed by fear."

In *People v. Elder,* 25 Ill.2d 612, 186 N.E.2d 27, the complaining witness testified that the defendant accosted her with his right hand in his jacket pocket, directed her to walk to the middle of a vacant lot and to lie down, and told her that she would not get hurt if she followed his instructions. There followed an act of sexual intercourse and three acts of deviate sexual conduct. Finally, while the defendant was lying on the ground she was able to escape, and she ran screaming for help. On appeal, after conviction for rape, the defendant contended that the evidence did not establish the commission of an act of intercourse by force.

The Supreme Court, in affirming the conviction, concluded that the threatening actions of the defendant taken together with the prosecutrix's immediate report of the rape were sufficient to demonstrate that the complaining witness's will to resist had been overcome.

■■ The degree of force used in the instant case is far greater than that employed in *Elder*. Glossie Davis testified that the defendant forced her into his car in knife point and that he continually kept a knife in view with which he threatened to disfigure her for life if she made an outcry or resisted his advances. Miss Davis did not attempt to resist or to cry out when the car stopped for gasoline; however, this conduct is understandable under the circumstances. As soon as she left the defendant she made a complaint to her landlady who immediately called the police. Both the landlady and the police corroborated the fact that Miss Davis was crying and hysterical just after the incident occurred. Dorothy Timms was also attacked at knife point. There was substantial evidence that the acts complained of were against the will of the complainants, and on the record before us we will not substitute our judgment for that of the trial judge.

■■ It is additionally contended that the trial judge erred in failing to admit testimony concerning the reputation of the apartment building where the complainants resided. The trial judge properly excluded this attempted attack on the reputation of the prosecutrixes by impugning the reputation of their residences.

For the reasons stated, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.