THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD A. WILCOX, Defendant-Appellant.

(No. 74-255;

Second District (1st Division)—November 6, 1975.

Julius Lucius Echeles and Carolyn Jaffe, both of Chicago, for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted of rape and deviate sexual assault (Ill. Rev. Stat. 1973, ch. 38, par. 11—1, par. 11—3) in a trial before the court without a jury. He appeals, contending that he was not proved guilty beyond a reasonable doubt, and that he was prejudiced by various rulings on evidence. He also claims that the court erred in refusing to grant his post-trial motion for a psychiatric examination of the complaining witness.

The complaining witness was a college student who had met the defendant about three weeks prior to the incident at a restaurant where he was employed as a waiter. She testified that she had seen defendant about six or seven times prior to the incident and had normal intercourse with him four or five of those times. She said she had not been afraid of him on those occasions.

The incident occurred at approximately 1:30 a.m. on October 26, 1973. She testified that in the evening of October 25 they had gone to a restaurant and to a club, both of which were near defendant's apartment. While they were at the club she had called her boy friend in California and had talked for about ten minutes. She said she and the defendant were arguing and she drove him to the garage of his apartment building to drop him off and drove into the garage when he asked her to. She testified that he then got out of the car, shut the garage door and came back to the car; that he told her to remove her clothes, which she did, as did he. He then asked her to engage in oral copulation, which she said she refused. She said that the defendant then struck her in the face several times; that she became hysterical; that he instructed her to go into a small room adjoining the garage telling her that he would hurt her otherwise. She said she saw an axe on the wall of the room.

She testified that defendant tied her wrists with a clothesline to pipes running along the ceiling; that he placed newspaper under the rope which she said was to avoid leaving marks. She was crying and kept telling him "no" but he told her to do as he said. Defendant then had anal intercourse with her. Because she was crying she said defendant gagged her. While she was gagged he started sweeping her body with

an old broom that had been lying in the room and beat her with a flexible nozzle wrapped in a curtain. She testified that she screamed as much as she could with a gag on. He then untied her, tried to kiss her and again told her to orally copulate or he would harm her more. She testified to what she considered further deviate sexual acts over her protests.

She related that they then had normal sex and thereafter he took the broom and stuck the handle in her vagina during the course of which she was hysterical and kept screaming and asking him to stop.

She said she told him she was getting cold and he then let her go to the car for a sweater. She tried to open the garage door but could not. While she was getting her sweater she also removed her car keys from his pants pocket where he had put them. She took his clothes out of the car, put the keys on the floor of the car, shut the car door and locked the passenger side. She then returned to the room. She said she was required to again engage in deviate sexual conduct and did not resist because she was afraid. She testified that she then asked if she could go to the car again and that he permitted her. He was drowsy. She was making small noises to see if he could hear her; it was very dark. He told her to come back; when she looked in the room he was asleep. She ran out, dressed, and after having difficulty working the lock she finally got the garage opened and drove off after shutting it.

She said that she then telephoned her girl friend Rosemary Camden but she was not there. She then called a mutual friend, Willard Merritt, and told him she had been raped and beaten, then she locked herself in the car and waited to be picked up. Merritt did so immediately and took her to Rosemary's home and stayed with her until her friend arrived. She said that she also told Rosemary of the beating and rape, mentioning that "Donald" had done it.

Merritt testified that when he picked her up she was screaming and that he observed that her face was swollen and putty colored and her eye was starting to turn black. He also said she was crying.

Rosemary Camden testified that she spent the afternoon of October 26 trying to calm the complaining witness. Later she suggested that it was a matter for the police. A detective whom the complaining witness' friend knew was called and took statements.

In rebuttal testimony the complaining witness said that she had never had any discussion with defendant regarding bondage or tying up and that before the day in question defendant had never placed his penis in her anus nor had she ever placed her mouth upon his penis.

Defendant testified, essentially, that the complaining witness willingly engaged in a form of sexual experimentation, willingly engaged in normal intercourse after she was untied, came into the garage and left it volun-

tarily. He testified that they had had relations ten or more times prior to October 26, including oral and anal sex.

Defendant related that on the evening of October 25, the complaining witness had talked to her boy friend in California for more than 50 minutes, was crying and upset; that they discussed where to go to have sex and that she agreed to go to the garage; that after arriving there they argued about the friend in California and defendant slapped the prosecutrix when she continued to cry and was somewhat hysterical. He said that she then calmed down, that each took off their clothes, and went naked into the trash room. He explained that they had discussed "tying up" and various sexual activities on previous occasions. He said she held the newspapers in place as he tied her; that he tied a gag in her mouth to simulate the phantasy; that they had normal sexual intercourse after which he fell asleep; that when he awoke she was gone but that his clothes were folded on a box near the wall. He denied he struck her with a broom or nozzle and denied he inserted a broom into her vagina. He said that the other portion of the broom was used but for a light sweeping of her body to evoke sexual sensitivity.

The doctor who examined the complaining witness after the incident was reported to the authorities testified at the trial. He indicated that there was no evidence of bleeding or abrasion in or around the vaginal canal, anal area or perineal area.

A prior conviction of defendant for robbery in 1971 for which he spent nine months in prison was introduced to impeach his credibility.

At the conclusion of the trial the judge said that he believed the complaining witness, believed that there was a forcible rape and that there were two acts of deviate sexual conduct, and that he did not believe that the defendant was a credible witness in his own behalf. He concluded that forcible rape and deviate sexual conduct were not what was "bargained for" in the fact situation before him.

Defendant first argues that he was not proven guilty of rape and deviate sexual assault beyond a reasonable doubt, in view of the prior relationship between himself and the complainant, her failure to sufficiently resist, the medical evidence contradicting her testimony regarding force, and a lapse of time before her complaint was made to the police.

■■ It is an essential element of rape that the proof must show that the act was against the will of the complainant, but a determination of the amount of resistance required must be made from the facts and circumstances of each particular case. (*People v. Montgomery*, 19 Ill. App.3d 206, 210 (1974); *People v. Boatman*, 3 Ill.App.3d 652, 656 (1972).) If the complaining witness has the use of her faculties and physical powers the evidence must show such resistance as will demon-

strate that the act was against her will. (*People v. Boatman*, 3 Ill.App.3d 652, 656 (1972); see also *People v. Smith*, 8 Ill.App.3d 36, 39 (1972).) If the victim retains the power to resist, her voluntary submission, no matter how reluctantly yielded, constitutes consent. (*People v. Chambers*, 127 Ill.App.2d 215, 221-222 (1970).) However, resistance is not required where it would be futile and would endanger the life of the victim or where the victim is overcome by superior strength or paralyzed by fear. *People v. Jones*, 28 Ill.App.3d 896, 329 N.E.2d 855, 858 (1975); *People v. Flournoy*, 1 Ill.App.3d 918, 921 (1971). See also *People v. Borak*, 13 Ill.App.3d 815, 818 (1973); *People v. Chambers*, 127 Ill.App.2d 215, 221-222 (1970).

It is also clearly established that where a conviction for rape depends upon the testimony of the complainant it must be clear and convincing or corroborated by other evidence. (*People v. Simental*, 11 Ill.App.3d 537, 541 (1973); *People v. Jones*, 28 Ill.App.3d 896 (1975), 329 N.E.2d 855, 859 (1975); *People v. Jackson*, 3 Ill.App.3d 303, 306 (1971).) Equally familiar is the rule that a court of review will not set aside a finding of guilt unless the evidence is so palpably contrary to the finding or so unreasonably improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. *People v. Reese*, 54 Ill.2d 51, 57-58 (1973).

■■ We conclude that the defendant was proved guilty of rape beyond a reasonable doubt. The fact that there had been previous sexual intercourse between the complaining witness and the defendant is, of course, a circumstance which must be taken into account and we have no doubt from the record that the trier of facts gave consideration to that circumstance. However, the previous consent to sexual intercourse and the fair implication that the witness would have been willing even on this occasion to engage in the acts previously consented, does not give the defendant a license to forcefully require other sexual acts which the complaining witness testified were against her will.

Defendant argues that the total circumstances reveal that her testimony was incredible. However, this became a matter of judging the credibility of her very detailed testimony against defendant's version which was consistent as to many of the facts performed but which sought to explain them as consensual. From the total record we are unable to say that the evidence was so unreasonably improbable or unsatisfactory as to cause a reasonable doubt to exist.

Defendant next argues that it was error to permit Rosemary Camden to testify over his objection to the details of the victim's complaint to her the following day which included the statement that "he beat me, he beat me," and that in answer to the witness' further inquiry, the victim stated "Don."

Statements made by a prosecutrix at a time too remote to qualify as a spontaneous declaration are admissible over hearsay objection so long as proof of such statements is limited to the fact that the complaint was made and does not give the name of the accused or the details of the offense. (See *People v. Stewart*, 130 Ill.App.2d 623, 626 (1970). See also *People v. Damen*, 28 Ill.2d 464 (1963).) In *Damen*, the court reasoned that admissibility of the explanation is based on the fact that certain circumstances cause physical or mental shock which still the reflective faculties causing the utterance to be a spontaneous and sincere response to actual sensations and perceptions, thus vouching for the reliability of the evidence as an exception to the hearsay rule.

■■ Here, the utterance was made at 11:30 a.m. on the morning following the incident. There is some indication that although the utterance was remote in time from the actual incident the prosecutrix may not yet have regained full control over her reflective faculties. Because of the long delay, however, we conclude that although the fact of the complaint to Rosemary was admissible as corroborative evidence the details (*i.e.* "Don did") should not have been admitted because of the remoteness. We also conclude, however, that the error does not require reversal because it is harmless beyond a reasonable doubt (See *People v. Bracey*, 51 Ill.2d 514, 518-19 (1972); *People v. Briggman*, 21 Ill.App.3d 747, 752 (1974)) under the total evidence including the fact that the prosecutrix had already testified on direct examination as to what she had said to Rosemary.

Defendant next argues that he was deprived of a fair trial because his prior conviction of robbery was admitted without the exercise of a considered judicial discretion as to whether or not the conviction had any relevance to defendant's present credibility. It appears that the previous indictment charged the defendant with beating and choking a victim and by intimidation and placing the victim in fear of immediate bodily injury, taking various items of personal effects from him. Upon conviction defendant was sentenced to a term of five years.

■■ We have examined the record and we find no indication that the trial judge did not understand that he had discretion to rule on the admissibility of the prior conviction. (See *People v. Montgomery*, 47 Ill.2d 510, 513 (1971).) We find no abuse of discretion in admitting the prior conviction as affecting the defendant's credibility here. See *People v. Mikrut*, 19 Ill.App.3d 516, 519 (1974).

Defendant next argues that the evidence failed to show that the alleged acts of deviate sexual assault were in fact "deviate sexual conduct" within the meaning of the applicable statutes. He contends that the State only proved that there was sexual contact between the mouth of complainant in one instance and her anus in another and defendant's

penis. He argues, however, that there is an absolute failure of proof that any of these contacts constituted acts of sexual gratification as required by the statute (Ill. Rev. Stat. 1973, ch. 38, pars. 11—2, 11—3). Defendant bases his argument upon his testimony that he did not have emission in those instances and upon the complaining witness' testimony that she did not recall that he did.

It is established that the intention with which an act is done may be inferred from the act itself and the surrounding circumstances. (See *People v. Legel*, 24 Ill.App.3d 554, 557 (1974); *People v. Mikota*, 1 Ill. App.3d 114, 119 (1971). See also *People v. Chambers*, 15 Ill.App.3d 23, 27 (1973).) Here, the defendant's behavior is representative of a continuing effort to reach orgasm by indulging in various sexual activities, some of which because of their extraordinary nature were considered by him to be more sexually provocative. The trial judge could properly conclude as the trier of facts that the defendant's acts under the circumstances were performed for sexual gratification.

Defendant finally contends that the trial court committed prejudicial error by denying defendant's post-trial motion to compel the prosecutrix to submit to a psychiatric examination and to consider the results of such examination before ruling on defendant's motion for judgment of acquittal or in the alternative for a new trial.

■■ It is established that a trial court may order a psychiatric examination of a complaining witness in a criminal case involving a sex violation upon a properly supported motion for such an examination. (*People v. Rossi*, 52 Ill.2d 13, 16 (1972).) And that it may do so in the exercise of its discretion when the defendant presents a "compelling reason" for the examination. *People v. Glover*, 49 Ill.2d 78, 82 (1971); *People v. Gersbacher*, 44 Ill.2d 321, 325 (1970).

On the record before us we conclude that the defendant did not present a compelling reason for the examination and that the court properly exercised its discretion in refusing it at the time it was made.

For the reasons which we have stated the judgment of the trial court is affirmed.

Affirmed.

GUILD and HALLETT, JJ., concur.