THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID A. WHEELER, Defendant-Appellant.

Fourth District    No. 4—89—0350

Opinion filed August 2, 1990.

Daniel D. Yuhas and John J. Hanlon, both of State Appellate Defender's
Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On January 27, 1989, following a jury trial in the circuit court of McLean County, defendant David A. Wheeler was convicted of criminal sexual assault for forcibly engaging in anal intercourse with his girlfriend. He was acquitted of aggravated criminal sexual assault. He was subsequently sentenced to a term of four years' imprisonment.

On appeal, defendant maintains (1) he was not proved guilty beyond a reasonable doubt of criminal sexual assault where he had a long-term, consensual sexual relationship with the victim, and her testimony was not corroborated; (2) the court erred in denying his motion *in limine* to bar reference to a handgun allegedly displayed during the incident; (3) the trial court erred in allowing the admission of evidence of a paternity suit, which the victim brought against defendant; and (4) the trial court erred in refusing defendant's tendered jury instructions on the defense of consent. We affirm.

The undisputed evidence at trial indicated (1) defendant and complainant S.M. were both 24 years old and had known each other for 11 years; (2) they had dated intermittently for nine years and had had a sexual relationship for approximately eight years; (3) the complainant and defendant had a three-year-old daughter, who lived with complainant; (4) although defendant and complainant had never lived together, for several years prior to this incident, defendant had a key to S.M.'s apartment, visited his daughter daily, and spent every Saturday night with S.M., during which time they would engage in sexual activities; (5) on Saturday, June 18, 1988, S.M. invited defendant to a family barbecue; (6) when they returned to S.M.'s apartment at midnight, S.M. put her daughter to bed and took a bath; and (7) after she finished bathing, she and defendant had consensual, vaginal intercourse on the kitchen table, but defendant did not ejaculate.

S.M. testified that after they had vaginal intercourse, defendant indicated he wanted to have anal intercourse with her and she refused. S.M. testified that defendant pulled a gun from his pants pocket, placed the gun in front of her, and warned her to be quiet so she would not awaken their daughter. She then described defendant's several attempts to have anal intercourse, the ensuing argument they had, and defendant's ultimately successful, forcible penetration of her anus. S.M. said she experienced considerable pain and bleeding, and

she vomited, but afterward, defendant was very apologetic and told her "[n]obody [would] ever have to know about this."

S.M. testified that she did not ask defendant to leave and did not call the police, because she was scared. She said she acquiesced when he later attempted to have vaginal intercourse again, because she "just didn't care" anymore. She indicated she acted as if everything were normal, and the next morning had the daughter give defendant a Father's Day present, because she just wanted to "get him out of there." She then took defendant to his house, took her daughter to her grandparent's house, and had her grandfather take her to the hospital. She said she was examined by a doctor and a nurse after 11 a.m., and she described the examination of her rectum as very painful. She said the doctor was unable to fully examine her, because she was too sore. She said that after she left the hospital, she went to the police station and filed a complaint. She indicated she missed three days of work after the incident and later moved from her apartment. She said she had not spoken with defendant since the date of the incident.

On cross-examination, S.M. admitted she did not know if her carpet or the blanket she was wearing were stained with blood, although she did know that there was blood on her and defendant, on the linoleum bathroom floor, in the toilet, on defendant's clothing, and on the underwear she wore to the hospital. She said no police officer photographed her or her carpet, and she did not know what had happened to the blanket, defendant's clothing, or her underwear. The State also supported its case with the testimony of Dr. Phillip Mitchell and Nurse Henkel, who examined S.M. in the hospital emergency room, and Kevin Zeeb, an Illinois State Police forensic lab scientist.

Defendant presented Clyde Cheek, who was defendant's supervisor at the Kroger grocery store where he worked, and Doug Price, a friend of both defendant and S.M. Cheek testified that defendant was honest, hard-working, dependable, dedicated, and had a very good reputation for peaceful and law-abiding conduct. Price testified that he was with defendant on June 18, 1988, that he and defendant had a few beers before S.M. arrived to pick him up, and that defendant did not appear to have a gun with him at that time. He said he was aware, however, that defendant owned a gun.

Defendant then testified (1) he had been employed by the Kroger Company since May 1986; (2) his 10-year relationship with S.M. was a "loving relationship," which had become serious in the previous four or five years; (3) approximately one week prior to this incident, he and S.M. argued about their daughter, and he told S.M. the only

reason he was still seeing her was because of the child; (4) on June 18, 1988, after they returned to S.M.'s apartment from the barbecue, they engaged in various consensual sexual activities, none of which included anal intercourse; (5) he never saw S.M. bleed from the rectal area, nor did he see her cry or become upset; and (6) the next morning, he received a card and gift from S.M. and the child, and S.M. took him home. He said he did not bring a gun to the apartment, and he did not place one near her as alleged.

S.M. testified in rebuttal that, contrary to defendant's assertions, he did not live with her, and he had frequently carried a gun after he had been in a car accident a month prior to the alleged assault.

Defendant argues the conviction cannot stand, because S.M.'s testimony was not "clear and convincing," and it was not corroborated by other facts and circumstances in evidence. (*People v. Jackson* (1989), 178 Ill. App. 3d 785, 793, 533 N.E.2d 996, 1001.) Defendant maintains that if an anal penetration was had, it was with the consent of S.M. Defendant notes that their previous long-term sexual relationship, as well as S.M.'s conduct during the day after the alleged offense, are inconsistent with her having been sexually assaulted against her will.

Defendant further argues the evidence did not support her claim of forcible anal intercourse. He notes she claimed he was "ranting and raving," she was crying and begging him to stop, and that he dragged her from the bathroom. Yet neither their daughter, who was sleeping 20 feet away, nor any neighbor in the small apartment complex heard anything. Defendant further notes S.M.'s conduct after the alleged assault was extremely suspect. He notes she admittedly told him she loved him, offered no resistance to a later attempt at vaginal intercourse, and did not call anyone, get into her car, or make any attempt to leave. In addition, he notes the next morning, she gave him a Father's Day present and told him she loved him before driving him home. Defendant claims this post-incident conduct was inconsistent with the concept of forced assault.

Moreover, defendant argues the medical testimony did not suggest a forcible anal assault.

Susan Henkel testified that S.M. told her she had been forcibly assaulted by anal intercourse, and she was concerned about permanent damage to her rectum. She said (1) she assisted in the collection of evidence via the sexual assault evidence-collection kit; (2) she observed "a little bit of bruising" in the rectal area; (3) she believed S.M. was uncomfortable, embarrassed and "shook up"; (4) the sexual assault medical-report form she had used to ask questions of S.M. in-

dicated S.M. had responded negatively to questions regarding whether she had vomited or changed her clothes after the attack; (5) her emergency room notes indicated that S.M. had not said anything about bleeding, although Henkel said such information would be very important; and (6) the notes reflected that S.M.'s status upon discharge was "good."

Dr. Phillip Mitchell testified at trial that he had examined and treated S.M. on July 19 in the hospital emergency room at about 2:30 p.m. He said she had a contusion or bruise in her outer anal area, and he was unable to do an internal rectal examination because of the tenderness. He said he did not observe any tears in the skin near the rectum, and the bleeding could have come from internal causes, such an hemorrhoids. He indicated the trauma was consistent with the insertion of "some kind of object" through the anus. He said, however, that there was no other indication of a recent struggle of any kind. He testified that he and a nurse collected vaginal, rectal, and oral swabs and smears of bodily fluids by inserting a Q-tip inside the various cavities. He said he believed it was possible for semen to transfer from the vagina to the anal area because of gravity, but the semen would not penetrate the anus.

Kevin Zeeb testified for the State that he had examined the various swabs and smears and found semen present on all of the vaginal and rectal samples, as well as a trace amount on an oral swab. He said the rectal smear contained a larger amount of semen than did the vaginal smear.

Defendant notes that both the physician and the nurse testified that the only trauma to S.M.'s body was a slight contusion in the area around the anus. In addition, he notes that contrary to S.M.'s testimony, Henkel said S.M. did not indicate she had vomited or changed her clothes after the attack, nor did she say anything about having bled, even though Henkel said such information was very important and would have been inquired about. Finally, defendant maintains the evidence was not clear that the semen was removed from inside the anal area, since Dr. Mitchell admitted the semen could have transferred from the vaginal area to the outer anal area by gravity.

Defendant concludes that the evidence demonstrated a set of circumstances so improbable and unlikely and without corroboration, that there exists a reasonable doubt as to defendant's guilt. We disagree.

We note initially that, contrary to defendant's assertion, S.M.'s testimony was substantially corroborated by the testimony of the

nurse and physician who examined her in the hospital emergency room. In addition, although the evidence established that S.M. had regularly consented to vaginal intercourse over a period of years, it did not establish that she consented to anal intercourse. She said they had never engaged in anal intercourse, and she did not consent to anal intercourse on this occasion. The previous consent to vaginal intercourse, "does not give the defendant a license to forcefully require other sexual acts which the complaining witness testified were against her will." *People v. Wilcox* (1975), 33 Ill. App. 3d 432, 436, 337 N.E.2d 211, 216.

The fact that S.M. did not call the police while defendant was asleep, because she was afraid he would wake up and hurt her, does not, under the circumstances, seriously impeach her testimony. (*People v. Redman* (1986), 141 Ill. App. 3d 691, 490 N.E.2d 958.) The evidence indicated that S.M. reported the incident as soon as she was able to remove herself and her child from defendant's presence.

The determination of the credibility of the witnesses, the weight to be given their testimony, and inferences to be drawn therefrom is a function of the trier of fact. The jury's determination of guilt should not be disturbed on review where, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.

■ Defendant next argues the trial court committed reversible error in denying defendant's motion *in limine*, and overruling his objections to references to a handgun allegedly displayed by defendant during the incident. Defendant maintains the evidence was irrelevant, since the indictment alleged the offense was committed with the "use of force," and not the *threat* of force. He further argues that the evidence of defendant's possession of a gun at the time of the alleged incident was highly prejudicial, since it suggested he was guilty of other crimes and was deserving of punishment for being a "bad person."

The court denied defendant's motion *in limine*, finding that evidence of the defendant's possession of a handgun would be "appropriate." We agree.

Although S.M. did not specifically testify that she submitted to anal intercourse because of her fear of the gun, the evidence of

defendant's possession of the gun, together with the fact that he placed the gun in front of her at a time when he warned her not to awaken their child, was part of the totality of the circumstances with which she was confronted as she attempted to resist defendant's efforts to engage in anal intercourse. The trial court properly denied defendant's motion *in limine.*

■ Defendant next argues the court erred in allowing S.M. to testify over defense objection that she had previously brought a paternity suit against defendant seeking support for their daughter. Defendant maintains such testimony was irrelevant to any issue in the case and was highly prejudicial.

We agree the evidence of a paternity suit was improperly admitted, but we deem the single reference to have been harmless. Defendant testified that he was the father of S.M.'s daughter, and that he often would visit her at S.M.'s apartment. The brief reference to the paternity suit was not so prejudicial as to require reversal.

Finally, defendant maintains the trial court erred in refusing to instruct the jury as defendant requested, as to the defense of consent. Defendant argues since there was "some evidence" of consent to this offense because of his long-term relationship with S.M. and her conduct after the incident, the State was required to disprove that defense beyond a reasonable doubt. The court, in holding the evidence was insufficient to warrant submitting the issue of consent to the jury, pointed out that defendant denied anal intercourse had occurred.

Defendant notes the prosecutor was allowed to argue the absence of consent in both the opening statement and closing argument. He maintains those arguments had the likely effect of not only eliminating any possibility that the jury would find consent and then acquit, but also suggested that the prosecutor felt consent had been raised by the evidence. Defendant notes that although the prosecutor was allowed to argue a lack of consent, the court specifically refused to allow the defense to argue its existence.

■ A defendant is entitled to appropriate instructions, which present his theory of the case to the jury, when and if the evidence supports such a theory. (*People v. Janik* (1989), 127 Ill. 2d 390, 398, 537 N.E.2d 756, 760.) This is so even if the facts on which the defense is based are inconsistent with defendant's own testimony. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 540, 349 N.E.2d 31, 34.) The United States Supreme Court has also recognized that a defendant has the right to argue inconsistent defenses (*Mathews v. United*

*States* (1988), 485 U.S. 58, 62, 99 L. Ed. 2d 54, 60, 108 S. Ct. 883, 886), even if the defendant denies one or more elements of the crime, whenever there is sufficient evidence from which a reasonable jury could find in defendant's favor. For example, in *Johnson v. United States* (1970), 426 F.2d 651, 656, the defense in a rape case was permitted to argue that the act did not take place and that the victim had consented. See also *People v. Gillespie* (1989), 181 Ill. App. 3d 1044, 1046, 537 N.E.2d 841, 842-43.

■ Although only "very slight" evidence on a given theory is necessary to justify the giving of an instruction (*Bratcher*, 63 Ill. 2d at 540, 349 N.E.2d at 34), here, the only evidence in support of defendant's theory of consent was the circumstantial evidence of the parties' past relationship and the victim's conduct immediately after the alleged incident. Clearly, S.M. had been a willing participant with defendant in acts of vaginal intercourse. However, that fact produces no inference that she was a willing participant in anal intercourse any more than such fact would produce an inference she was a willing participant in other deviant sexual activity. Defendant denied that anal intercourse ever occurred, and S.M. denied consenting to anal intercourse; thus, neither party testified to consent. Considering the totality of the record, we conclude any inferences arising from the circumstances related by the parties, which are alleged to have indicated consent, are too remote to constitute the "very slight" evidence necessary to require the instruction. We conclude, therefore, the trial court properly found a reasonable jury could not find consent and properly refused the tendered instruction.

Accordingly, for the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

LUND and STEIGMANN, JJ., concur.