In the

# United States Court of Appeals
### For the Seventh Circuit

No. 13-1531

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN D. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 00498 — **Charles R. Norgle**, *Judge.*

ARGUED NOVEMBER 5, 2013 — DECIDED FEBRUARY 12, 2014

Before BAUER, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Unexpectedly for both the government and defense counsel, Brian Johnson's former girlfriend, S.W., appeared at his sentencing hearing and stated she wanted to testify. Johnson had pled guilty to failure to register as a sex offender, and the government's sentencing memorandum requested an enhancement for committing a sex offense on the basis that Johnson sexually assaulted S.W. With neither party wishing to call her as a

witness, the judge exercised his authority to call Johnson's S.W. to the stand. She testified that although she did not want Johnson to perform oral sex on her on the date in question, he did anyway but did not use force. The judge relied on and believed S.W.'s testimony at the sentencing hearing when it imposed a U.S.S.G. § 2A3.5(b)(1)(A) enhancement for committing a sex offense while in failure to register status. Because the crimes of criminal sexual assault and abuse in Illinois require the use or threat of force in such a situation, Johnson should not have received the enhancement for committing a sex offense while in failure to register status. We therefore vacate Johnson's sentence and remand for resentencing.

## I. BACKGROUND

Brian Johnson was convicted in Nebraska state court of third degree sexual assault of a child. His conviction required him to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"). He failed to register or report his new address after his release from prison in December 2011, and a warrant for his arrest was issued two weeks later.

On April 22, 2012, the Chicago Police Department responded to a call of an alleged sexual assault by Johnson against S.W., Johnson's former girlfriend and the mother of several of his children. She told a responding officer that Johnson dragged her to a bedroom and started taking her clothes off even though she said she did not want to have sex. She also told the officer that Johnson performed oral sex on her, and then placed his penis in her vagina while she told him "no." The police transported S.W. to a hospital. She

did not press charges against Johnson, and no charges were filed.

On May 31, 2012, Johnson was arrested on the outstanding warrant, and he was charged the next month with failure to register as a sex offender under SORNA, in violation of 18 U.S.C. § 2250(a). In August 2012, S.W. signed a notarized affidavit stating that the report she made of the alleged sexual assault on April 22, 2012 was untrue.

Johnson pled guilty to the failure to register charge several months later. The probation officer's presentence investigation report ("PSR") stated that it was that officer's assessment that there was not a preponderance of evidence to suggest that the alleged sexual assault against S.W. occurred. The report noted S.W. had made contradictory statements on several occasions about the alleged assault; Johnson had continuously denied the alleged sexual assault in his letters to S.W. and during recorded telephone conversations with her; there were no witnesses to the alleged assault; the incident report reflected no visible injuries, scratches or bruises on S.W.; and Johnson's letters to S.W discussed sexual events in the past and future that raised doubt for the officer as to whether the alleged sexual assault was not consensual.[1] The PSR therefore did not

---

[1] While we understand the probation officer to have made these comments as part of an assessment of all the circumstances, we make a few things clear. While there were no witnesses, corroboration is not necessary to prove a sexual offense in Illinois; a victim's testimony is enough. *People v. Schott*, 582 N.E.2d 690, 696–97 (Ill. 1991). In addition, a lack of physical injury is not dispositive; "[p]hysical injury or resistance is not necessary to prove a victim was forced to have sexual intercourse, and a victim need not subject herself to serious bodily harm by resisting … ." *People v. Bowen*, 609 N.E.2d 346, 356 (Ill. App. Ct. 1993). And one can

assess a six-level enhancement for committing a sexual offense against someone other than a minor while in a failure to register status under U.S.S.G. § 2A3.5(b)(1)(A). The government stated in its sentencing memorandum that it would request the enhancement at the sentencing hearing.

At the sentencing hearing, although neither the government nor the defense counsel expected her or intended to call her as a witness, S.W. appeared in the courtroom and expressed her desire to testify. The prosecutor met with S.W. and then conveyed S.W.'s desire to make a statement to the court. Both parties, however, reiterated their positions that they would not be calling her as a witness in the sentencing hearing. The court, exercising its authority to do so, *see, e.g.*, Fed. R. Evid. 614, allowed S.W. to testify.

Before S.W. took the stand, Johnson's counsel stated to the court that although he was not her lawyer, his opinion was that S.W. should speak with a lawyer before testifying because her testimony might contradict her previous notarized statement or the statement she made to a federal marshal. After S.W. confirmed on the witness stand that she wished to testify and intended to tell the truth, the judge asked S.W. if she wanted to speak to a lawyer before she testified. S.W. answered "yes." The judge then asked her why, and she responded because of the previous statement she made, which she said was a misunderstanding. Rather than allowing her time to speak to an attorney, the court

certainly be sexually assaulted even after having had consensual relations with the same person in the past. *See People v. Wheeler*, 558 N.E.2d 758, 761 (Ill. App. Ct. 1990).

informed her that the matter had long been set and that if she intended to testify at all, she would do so that day. The court also advised her that she was not required to take the witness stand, that if she did she needed to tell the truth, and that she could be punished if she was not truthful.

S.W.'s appearance at the sentencing hearing was unexpected, and delaying a scheduled hearing is never ideal. Nonetheless, we note that in light of the decision to allow her to testify and the strong indications that she would testify in a manner contrary to her prior statements, the safer course would have been to allow S.W. time to speak to an attorney before her testimony. The court might have also inquired of the prosecutor whether it would assure her immunity if she testified.

After being sworn, S.W. testified that on April 22, 2012, Johnson told her he was taking her to his cousin's house. When they arrived, she realized they were not at his cousin's home but at the home of the mother of several of his other children. S.W. testified that because she was jealous, she made a false report to the police. She also testified that Johnson did not rape her and that he had performed oral sex on her but had not used physical force. She said Johnson was a good father and deserved a second chance, and that she was upset she had lied.

The court then gave the prosecutor an opportunity to question S.W. That questioning went as follows:

Q. On April 22nd, 2012, did Brian Johnson force oral sex upon you?

A. I did say that he did that.

Q. You stated that because he did, in fact, force oral sex upon you?

A. Yes, I did say that. I mean, he—he didn't really use force on me. But he did force on me, but he didn't use force, like physical force.

Q. You did not want him to perform oral sex upon you, is that correct?

A. Yes, that's correct. I didn't want him doing it because I was over at his kids' mother house at that time. I did at the time. There, I didn't, no.

Q. Yet he performed oral sex upon you, is that right?

A. Yes.

On cross examination, defense counsel asked S.W. whether Johnson raped her on April 22, and she replied, "No, he didn't." She also confirmed that she was the mother of four of his children, had prior sexual intercourse with Johnson that was all consensual, and that she had been drinking. The judge verified with S.W. that she understood the prosecutor's questions and had answered them truthfully, and her testimony ended.

Johnson's base offense level under U.S.S.G. § 2A3.5(a)(1) was sixteen because he had been required to register as a Tier III sex offender. The prosecutor requested, as it had in its sentencing memorandum, that the judge apply the six-level enhancement in U.S.S.G. § 2A3.5(b)(1)(A) for committing a sex offense while in failure to register status based on Johnson's conduct on April 22. Johnson's counsel disagreed, arguing in part that there was no sexual conduct with force as required by Illinois statute. The prosecutor

made arguments in support of the enhancement but did not specifically address whether force was present. The sentencing judge credited S.W.'s testimony, found that Johnson performed oral sex on S.W. without her consent, and applied the enhancement. The judge also imposed a two-level obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1. The resulting offense level of twenty-four, combined with Johnson's criminal history category of VI, yielded an advisory guideline range of 100 to 125 months. The district court sentenced Johnson to ten years' imprisonment, and he appeals.

## II. ANALYSIS

Johnson argues that he should not have received a six-level enhancement pursuant to U.S.S.G. § 2A3.5(b)(1)(A) for committing a sex offense against someone other than a minor while in failure to register status. For purposes of this guideline, a "sex offense" includes "(i) a criminal offense that has an element involving a sexual act or sexual contact with another" or "(v) an attempt or conspiracy to commit an offense described in [clause] (i)." 42 U.S.C. § 16911(5); U.S.S.G. § 2A3.5(b)(1)(A) cmt. n. 1. The term "criminal offense" means a State, local, tribal, foreign, or military offense or other criminal offense. 42 U.S.C. § 16911(6).

While Johnson contends that the enhancement was unwarranted, the government maintains that Johnson committed criminal sexual assault or criminal sexual abuse in violation of Illinois law. The Illinois criminal sexual assault statute provides in relevant part that a criminal sexual assault occurs when a person "commits an act of sexual penetration" and "uses force or threat of force." 720

Ill. Comp. Stat. 5/11-1.20.[2] "Sexual penetration" under the
statute includes oral sex. *See* 720 Ill. Comp. Stat. 5/11-0.1
("Sexual penetration means any contact, however slight,
between the sex organ … of one person and … the sex organ
… of another person, or any intrusion, however slight, of
any part of the body of one person … into the sex organ …
of another person, including … cunnilingus."); *People v.
Leonard*, 879 N.E.2d 414, 418 (Ill. App. Ct. 2007). A person
commits criminal sexual abuse in violation of Illinois law by
committing an act of sexual conduct by the use of force or
threat of force. 720 Ill. Comp. Stat. 5/11-1.50(a)(1).[3] "Sexual
conduct" includes oral sex. *See* 720 Ill. Comp. Stat. 5/11-0.1.

In a sentencing hearing in federal court like this, the
government bears the burden of proving by a
preponderance of the evidence that a sentencing
enhancement is warranted. *United States v. Hines*, 449 F.3d

---

[2] The statute provides for other means of committing criminal sexual
assault as well, but the government does not contend those apply here.
Criminal sexual assault also occurs in Illinois when a defendant commits
an act of sexual penetration and knows that the victim is unable to
understand the nature of the act and is unable to give knowing consent;
or is a family member of the victim, and the victim is under 18 years of
age; or is 17 years of age or over and holds a position of trust, authority,
or supervision in relation to the victim, and the victim is at least 13 years
of age but under 18 years of age. 720 Ill. Comp. Stat. 5/11-1.20(a)(2)–(4).
Although S.W. testified she had been drinking on April 22, there is no
suggestion she was unable to understand the nature of the act or unable
to give knowing consent.

[3] A person can also commit criminal sexual abuse by committing an act
of sexual conduct knowing that "the victim is unable to understand the
nature of the act or is unable to give knowing consent." 720 Ill. Comp.
Stat. 5/11-1.50(a)(2). There is no suggestion that this provision applies in
this case.

808, 815 (7th Cir. 2006). So the government bore the burden
of establishing that Johnson committed a sex offense against
S.W. in violation of Illinois law, and more particularly that he
performed a sexual act on her using force or the threat of
force. *See id.*; 720 Ill. Comp. Stat. 5/11-1.20; 720 Ill. Comp.
Stat. 5/11-1.50.

When analyzing whether Johnson used force, one
approach might be to find that "force" was present here
because some force was inherently needed to perform the
sexual act. At least one state has taken this approach. *See
State in Interest of M.T.S.*, 609 A.2d 1266, 1276–77 (N.J. 1992)
(defining "physical force" under New Jersey sexual offense
statutes as "act of sexual penetration engaged in by the
defendant without the affirmative and freely-given
permission of the victim" and holding that no physical force
"extrinsic to the sexual act" need be shown). But in Illinois,
"force" within the meaning of criminal sexual assault and
abuse does not mean the force inherent in the sexual act;
more is required. *People v. Haywood*, 515 N.E.2d 45, 48–50 (Ill.
1987); *People v. Denbo*, 868 N.E.2d 347, 355 (Ill. App. Ct. 2007)
(stating "force" within the meaning of the criminal sexual
offenses "does not mean the force inherent to all sexual
penetration … but physical compulsion, or a threat of
physical compulsion, that causes the victim to submit to the
sexual penetration against his or her will.").

For purposes of both criminal sexual assault and criminal
sexual abuse, Illinois defines "force or threat of force" to
mean:

> the use of force or violence or the threat of force or
> violence, including, but not limited to, the following
> situations:

(1) when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believes that the accused has the ability to execute that threat; or

(2) when the accused overcomes the victim by use of superior strength or size, physical restraint, or physical confinement.

720 Ill. Comp. Stat. 5/11-0.1. That said, "[t]here is no definite standard establishing the amount of force which the State is required to prove to show [criminal sexual assault]."*People v. Vaughn*, 961 N.E.2d 887, 896 (Ill. App. Ct. 2011) (quoting *People v. Bolton*, 566 N.E.2d 348, 351 (Ill. App. Ct. 1990)).

The government argued at the sentencing hearing that the enhancement was proper on the basis that the sexual conduct took place without S.W.'s consent. While there is no definite standard as to the amount of force needed, what is clear is that because Illinois law is at issue, Johnson must have used force or the threat of force in order to have committed criminal sexual assault or abuse against S.W. *See* 720 Ill. Comp. Stat. 5/11-1.20(a)(1); 720 Ill. Comp. Stat. 5/11-1.50; *Denbo*, 868 N.E.2d at 358 (reversing aggravated sexual assault conviction after finding insufficient evidence of force or threat of force). Some states make it a crime to have sexual intercourse with another without that person's consent, with no showing of force or threat of force required. *See, e.g.*, Wis. Stat. § 940.225(3) (defining crime of third degree sexual assault to mean "sexual intercourse with a person without

the consent of that person")[4]; *see also* John F. Decker & Peter G. Baroni, *"No" Still Means "Yes": The Failure of the Non-Consent" Reform Movement in American Rape and Sexual Assault Law*, 101 J. Crim. L. & Criminology 1081, 1086–90 (2011) (discussing state laws which criminalize having sexual intercourse or contact without consent). "Consent" appears in the Illinois criminal statutes relevant to sexual offenses, but it appears as a defense to a charge of sexual assault or abuse with force or threat of force. 720 Ill. Comp. Stat. 5/11-1.70.[5] Illinois does not, however, have a statute that criminalizes sexual intercourse with another adult without the other's consent, without more. *See* Decker & Baroni, *supra*, at 1085–86 & n.21 (discussing Illinois and other states that "do not have any non-consent sex offenses"). Therefore, the district court's finding that Johnson performed oral sex without S.W.'s consent was not sufficient to support the enhancement.

And the district court did not find that Johnson used force or the threat of force. But as we explained, the Illinois sex offenses require such a showing. The government points out that force can be found in statements from S.W. that pre-

---

[4] Wisconsin defines "consent" to mean "words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact." Wis. Stat. § 940.225(4).

[5] The Illinois statute defines "consent" to mean "a freely given agreement to the act of sexual penetration or sexual conduct in question." 720 Ill. Comp. Stat. 5/11-1.70(a). The statute further states: "Lack of verbal or physical resistance or submission by the victim resulting from the use of force or threat of force by the accused shall not constitute consent. The manner of dress of the victim at the time of the offense shall not constitute consent." *Id.*

date the sentencing hearing, and it argues that the district court relied at least in part on documents containing these statements when it imposed the six-level enhancement. There is no evidence in the record to support that. The district court never mentioned any of S.W.'s prior statements to the police or federal marshal as it considered whether to impose the enhancement. Rather, the sentencing hearing transcript reflects that the district court found S.W.'s testimony at the hearing credible and that it imposed the enhancement based on that testimony. After hearing her testimony and the parties' arguments as to whether the enhancement was warranted, the judge stated:

> The issue of what happened on April 22nd becomes clear now that the Court has heard the testimony of Ms. W. here in court today. She came before the Court not having been subpoenaed, not compelled to be here, came in and insisted on taking the witness stand … . The government asked her very specific questions. She gave very specific answers … . What she ultimately testified to today is that she did not consent to oral sex upon her by the defendant, Brian D. Johnson. She made that statement under oath. It is for the Court to determine the credibility of the witness at this sentencing hearing. I listened to her testimony very closely, observed her on the witness stand, had an opportunity to judge her demeanor, and I find that on this issue of what occurred on April 22nd, she is a credible witness. And that the defendant performed oral sex upon her against her will and without her consent. And the objection to the six-level enhancement is overruled.

The prosecutor then asked for clarification from the court, noting that the probation officer had recommended against the enhancement. The judge's response—"The probation department did not have the benefit of what occurred [this] morning and did not, of course, hear the testimony of Ms. [W.] under oath"—further demonstrates that the judge was imposing the enhancement based only on S.W.'s testimony at the hearing.

So the judge believed and relied on S.W.'s hearing testimony in imposing the enhancement. And there is nothing in S.W.'s hearing testimony from which one can find that Johnson used force or the threat of force. S.W. testified at the hearing that Johnson did not rape her. She testified that while Johnson did perform oral sex on her, "he didn't, like, use physical force on me." Then, when the prosecutor got up to examine S.W., his first question was whether Johnson forced oral sex on her. S.W. replied only that she "did say that he did that." The prosecutor then asked if she had stated that because Johnson did, in fact force oral sex upon her, to which S.W. replied, "Yes, I did say that. I mean he—he didn't really use force on me. But he did force on me, but he didn't force on me, like physical force." The prosecutor next asked S.W. whether she wanted Johnson to perform oral sex on her, and she said she did not because she was at the home of his children's mother.

While S.W. may not have wanted Johnson to perform oral sex on her, her testimony at the hearing would not support a finding that he used any force or threat of force in doing so. *Cf. People v. Taylor*, 268 N.E.2d 865, 869 (Ill. 1971) (reversing rape conviction and finding that although act was "revolting," it was not done with force). In fact, she

specifically stated in two different parts of her testimony that he did not use force. Her statement that "he didn't really use force on me. But he did force on me, but he didn't force on me, like physical force" is confusing, but in light of its internal contradiction, it is not enough to support a conclusion that Johnson used or threatened force on April 22. And, in any event, the district court did not find that Johnson used or threatened force.

That is not to say that the requisite force must be physical force; it need not be. Here, though, there is no indication from S.W.'s testimony, for example, that she felt overcome by Johnson's superior size or strength, or that she felt physically restrained or confined, *cf.* 720 Ill. Comp. Stat. 5/11-0.1, or that she was fearful or scared of Johnson, *cf. Vaughn*, 961 N.E.2d at 896 (finding the use of force or threat of force present where "the evidence clearly shows the 14-year-old girl was overcome by fear and the sheer presence of her father committing the offenses that resistance need not have been established in order to demonstrate the use of force or threat of force"). And while there may be some situations where a finding of a lack of consent indicates that the defendant used force or the threat of force, here S.W.'s hearing testimony— the testimony upon which the enhancement was based— does not do so.

Because S.W.'s testimony does not support the requisite force or threat of force necessary to find that Johnson committed criminal sexual assault or abuse under Illinois law, the U.S.S.G. § 2A3.5(b)(1)(A) enhancement was improper. Although Johnson's appellate brief focused on S.W.'s credibility rather than on the element of force, even if the standard of review is plain error, Johnson's case must be

remanded for resentencing. *Cf. United States v. Goodwin*, 717 F.3d 511, 525 (7th Cir. 2013) ("[W]hen in a criminal appeal the court of appeals notices a plain error, it can reverse even if the appellant had not drawn the error to the court's attention.") (citation omitted). The error was plain, as we discussed. It affected Johnson's substantial rights because it resulted in an improper, and increased, guidelines range. *See United States v. Johns*, 732 F.3d 736, 740 (7th Cir. 2013). Without the six-level enhancement, Johnson's advisory guideline range would have been 57 to 71 months; with it, the range was 100–125 months. We believe the error impacted the fairness of the proceedings, noting that Johnson raised the lack of force at the sentencing hearing, and we exercise our discretion to correct the error. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 851 (7th Cir. 2005). Johnson has therefore met the requirements for plain error, and we vacate his sentence and remand for resentencing without the six-level enhancement.

### III. CONCLUSION

Johnson's sentence is VACATED and his case is REMANDED for further proceedings.