THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND B. BOLTON, JR., Defendant-Appellant.

First District (2nd Division)   No. 1—89—2224

Opinion filed December 18, 1990.

Donald Hubert & Associates, of Chicago (Donald Hubert and Mark Zapf, of counsel), for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Sally Dilgart, and Sherry Biedar, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Raymond B. Bolton, Jr., appeals from his conviction for criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)), questioning whether the State proved him guilty beyond a reasonable doubt. He was sentenced to four years in custody of the Department of Corrections.

At the bench trial, the following evidence was adduced. On October 11, 1986, the victim, C.W., and her friend, F.T., were at a neighborhood skating rink where they saw Robert Thomas ("Big Rob"), Harry Reginald and Steve Willis. All three were F.T.'s friends; C.W. had known Big Rob only for about one month. When the rink closed at 11 p.m., the girls went to F.T.'s house. Harry later stopped by and informed them that Big Rob was throwing a party. They walked over and entered through the back door. C.W. went down to the basement, where she saw Arvester Trezvant ("Batter"), Shon Dixon ("Shane") and Dianl McGuire ("Slick"). Since C.W. and F.T. were the only girls at the party, F.T. left to find some other girlfriends, accompanied by Thomas Leatherwood ("Two Tone") and Willis. F.T. returned 10 to 15 minutes later, but was unable to find any more girls to join the party.

When F.T. returned, C.W. told her she wished to leave. From the kitchen phone, she called a friend, but was unable to secure a ride home. C.W. then went upstairs to the living room with F.T., Two Tone, Batter and another youth named "Little Ray," to watch cable television. C.W. asked Little Ray for a cigarette, and he refused. C.W. replied that he "makes [her] sick." Batter told Little Ray what C.W. had said, and Little Ray threatened to "kick her ass." Batter then took his cigarette and burned her on the lip. C.W. pushed him, and a shoving match followed in which Batter fell over the coffee table and hit his head.

C.W. again told F.T. she was ready to go, but F.T. said she was not ready. C.W. got up and tried to enter the kitchen when Batter grabbed her arm and pulled her into Big Rob's bedroom. Two Tone and Slick also came in, and Slick started hitting and kicking her. Two Tone pulled her clothes off, and she was thrown on the bed. Batter then had oral and vaginal intercourse with C.W. While Batter had sex with her, Two Tone put his penis in her mouth and ejaculated. Slick also had oral and vaginal intercourse with C.W., and Two Tone raped her. C.W. explained that while one attacker had oral sex, another

would rape her. Shane next entered the room and tried to rape C.W., but was unable to do so. He told her to "[l]oosen up, bitch," and Slick asked, "Is she acting right?" When someone answered "no," Slick began slapping her and said, "This bitch got to show some love to the folks."

At that time, Big Rob came into the room and had oral sex with C.W., while Sheldon Harris raped her. Later, defendant entered the room. F.T., meanwhile, had tried to gain entry into the bedroom, but was pushed out. When she tried again, Batter told her she "must want some, too." Slick slapped her, and Batter pushed her down and pulled her into another bedroom. At that time, C.W. declared that "Big Ray [defendant], I think he had his penis in my mouth at that time." Defendant later had vaginal sex with her. After the attacks, Big Rob told C.W. to put her clothes on and not tell anyone. Rob unlocked the door and she, F.T., and Phillip left. Two Tone, Steve, and Harry also left at roughly the same time. As they were walking toward the corner, Slick came out of the alley with his coat held over his hands. He asked if the girls were walking to the "el" stop. They said no, and Steve told him they were getting a ride.

C.W. and F.T. accepted Two Tone's ride offer because they did not want to walk to the "el" with Slick. They drove to Harry's cousin's house, where C.W. called her grandmother. Two Tone offered the girls money if they would not tell anyone.

The girls were taken to Roseland Hospital, where they were treated by doctors and questioned by police. Chicago police officer Gerald Pustay spoke with F.T. and C.W. at the hospital on October 12, 1986. C.W. had visible swelling on her face, a burn on her lip and bloodshot eyes which looked as if she had been crying. F.T. was also bruised. Both girls were in a nervous and excited state, and neither appeared to be under the influence of alcohol or drugs.

Chicago police officer Raymond Madigan noted similar injuries on the girls when he spoke to them at the hospital. After his interview, Madigan went to defendant's house and placed him under arrest. Madigan also visited the scene of the crime and described the Thomas house as being in "disarray" with many bottles, glasses, and beer cans strewn about. In two of the bedrooms, clean new sheets were on the beds. Both the front and back doors had deadbolts on them which were operated by a key. At a lineup held later that night, C.W. identified defendant as her attacker, along with Two Tone and Big Rob.

Defendant later gave police and an assistant State's Attorney a handwritten statement in which he admitted being at the party and having sex with C.W.

F.T.'s testimony was similar to C.W.'s in many aspects. After Batter and C.W. fought, C.W. left the living room. A little while later, F.T. heard C.W. scream. She went back to Big Rob's room, but could not get inside. She returned to the living room and attempted to telephone for help, but she could not get a dial tone. She went back to Big Rob's room and this time got in. The light was off, and when she turned it on, she saw defendant with his penis in C.W.'s mouth and tears in C.W.'s eyes. Someone yelled to turn out the light, and Batter twisted her arm. At that time, Big Rob and Slick were also in the room. Batter told her that she "must want some, too," and Slick slapped her in the face. F.T. was pulled into another bedroom, where Batter and Two Tone both raped her. F.T. denied that Two Tone offered the girls money not to tell.

The parties stipulated that both girls' vaginal smears tested positive for sperm and that the doctors noted various injuries on the girls' faces.

Defendant maintains that the State failed to prove him guilty beyond a reasonable doubt because C.W. was equivocal about whether defendant orally assaulted her and because there was no evidence that defendant forced her to perform the act.

■ A more modern standard for review in criminal sexual assault cases is that found in *People v. James* (1990), 200 Ill. App. 3d 380, 394, 558 N.E.2d 732, and in *People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208, which is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, relying upon *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267. The *James* and *Roy* courts ruled that previous standards such as requiring the complainant's testimony to be clear and convincing or corroborated by other evidence (see, *e.g., People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019) are sexist and archaic. Defendant's conviction here may stand, however, under either standard.

■ There is no requirement that testimony be crystal clear and perfect in order to qualify as clear and convincing. (*People v. Born* (1987), 156 Ill. App. 3d 584, 590, 509 N.E.2d 125; *People v. Server* (1986), 148 Ill. App. 3d 888, 894, 499 N.E.2d 1019, *cert. denied* (1987), 484 U.S. 842, 98 L. Ed. 2d 88, 108 S. Ct. 131.) Minor variances affect only credibility, a factor which is left for resolution by the trier of fact. (*People v. Cregar* (1988), 172 Ill. App. 3d 807, 820.) Discrepancies which do not detract from the reasonableness of the complainant's testimony may be held clear and convincing. (*People v. Red-*

*man* (1986), 141 Ill. App. 3d 691, 703, 490 N.E.2d 958.) Upon review, the circuit court's judgment will not be set aside unless the proof is so unsatisfactory, improbable or implausible that would justify a reasonable doubt as to the defendant's guilt. *People v. Server*, 148 Ill. App. 3d 888.

■ Defendant points to C.W.'s direct examination where she stated she thought defendant had his penis in her mouth as evidence of the complainant's lack of credibility. Some of C.W.'s lack of certainty can be attributed to the fact that the bedroom lights were kept off as often as possible. In that case, C.W. might be confused as to who was assaulting her and in what manner. F.T. corroborated C.W.'s account of defendant's assault. Corroborating evidentiary matters include an eyewitness account, confession or admission by the defendant, prompt reporting of the incident by the victim or medical testimony which supports allegations of abuse. (*People v. Server*, 148 Ill. App. 3d at 895.) F.T. swore unequivocally that at the time she entered the room and opened the light, defendant "had his penis in [C.W.'s] mouth." During the lengthy and often times confusing cross-examination, F.T. never wavered on this point. Moreover, defendant confessed to having sex with C.W., and C.W. herself promptly reported the incident to authorities in which she named defendant as her attacker. Medical evidence reflected that sperm was present in C.W.'s vagina and that she was injured in the manner in which she testified.

■ In its findings, the circuit court relied on F.T.'s testimony, which the record reveals to have been articulate, clear and convincing. Although F.T. does not remember C.W. telephoning her friend for a ride from the party, the record reflects that F.T. was not always in C.W.'s presence. Other discrepancies to which defendant points are also minor in view of F.T.'s overall clarity and credibility. The circuit court's finding of oral contact between defendant and C.W. is not so unreasonable as to warrant reversal.

Defendant also maintains that the element of force (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)) was not proven beyond a reasonable doubt.

■ There is no definite standard establishing the amount of force which the State is required to prove to show rape. If circumstances show resistance to be futile or life endangering or if the victim is overcome by superior strength or fear, useless or foolhardy acts of resistance are not required. *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 151, 481 N.E.2d 883; *People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 717, 431 N.E.2d 1154.

In the case *sub judice*, C.W. declared that she was pulled into a

room, held down and undressed by Two Tone, and slapped by Slick and Batter. She screamed at least once before the multiple attacks began. Slick, who by all accounts never left the bedroom, began to hit her when one of the attackers complained that C.W. was not "acting right." Moreover, C.W. swore that she did not consent to any of the acts with any of her attackers. The record reveals that C.W. was always in the room with at least three men; two of them beat and abused her throughout the night. Although the record is silent as to C.W.'s size, it does indicate that defendant and his associates were members of the high school football team. C.W. was therefore subjected to some superior strength. As to defendant's assertion that C.W. failed to make any type of outcry, the record leaves no doubt that C.W. was never physically able to make such an outcry, beyond the initial one she made.

■ The cases defendant relies upon are factually distinguishable and do not persuade. In *People v. Rossililli* (1962), 24 Ill. 2d 341, 181 N.E.2d 114, the victim was the only one to testify as to the alleged rape, and her testimony was entirely uncorroborated. Here, F.T. testified that three men were in the room at the time defendant was attacking C.W. and that C.W. had tears in her eyes. This tends to corroborate C.W.'s assertion that the act was nonconsensual. Moreover, both the police and the doctors who examined C.W. reported the numerous bruises and injuries about her face, a further indication that force was concentrated upon C.W., rendering these acts nonconsensual. In *People v. Qualls* (1961), 21 Ill. 2d 252, 171 N.E.2d 612, there was no evidence of the use of any force upon the victim such as bruises, marks, or contusions upon her body. Moreover, the victim was struck only after the act of intercourse, when she wanted to leave the apartment. At bar, there was substantial evidence as to C.W.'s injuries sustained before the attack and further evidence that flight from the home would have been impossible because both doors were deadbolted, and Big Rob had the only key, which he kept on his person.

Defendant also argues in his reply brief that C.W. could have resisted the attacks just as F.T. had done. After F.T. was raped by Batter and Two Tone, two men entered the room with their pants down. She told them she was "going to tell," and they ran out. Two Tone then came in, and she told him she "would give him some" if he made sure that the others would not "do [her] like they were doing [C.W.]." It should be noted that when F.T. told the two boys she was going to tell the police, neither Batter nor Slick was present in the room. These two men were the primary intimidators throughout the whole

night and oversaw all the action. Moreover, it could hardly be said that consent is present when a victim chooses one sexual assault by a single attacker over repeated sexual assaults by a number of different men.

For the foregoing reasons, we find that the State's evidence left no reasonable doubt of defendant's guilt.

Affirmed.

DiVITO, P.J., and SCARIANO, J., concur.